Appellant Arnold Cydrus appeals a judgment entered by the Chillicothe Municipal Court in favor of appellee Alma Houser. He assigns three errors for our review:
 1.) The Trial Court erred in failing to consider the testimony of the Defendant that she did approach a gun dealer prior to sale and therefore had no knowledge of the guns [sic] true value.
 2.) The Trial Court erred in finding that Defendant did not misrepresent material facts about the shotgun.
 3.) The Trial Court erred in deciding that there was no mutual mistake of fact.
We overrule each of these assignments of error and affirm the judgment of the trial court.
 I.
Robert Houser, Sr. is a retired police officer who collected guns for many years. After he was confined to a nursing home, Mrs. Houser decided to sell Mr. Houser's gun collection in order to pay his substantial medical bills. Wes Williams, the co-owner of a gun shop in Waverly, Ohio, learned through a mutual acquaintance that Mrs. Houser wished to sell a gun collection. Mr. Williams contacted Mrs. Houser to inquire about the collection.
After examining the guns, Mr. Williams recommended that Mrs. Houser contact an auction house because the guns were more valuable than the local market would bear. In any event, Mr. Williams made a list including the type of gun and the serial number, condition, and grade of each gun. Included in the collection was a gun Mr. Williams identified as a Parker A-1 shotgun. Mr. Williams concluded that the firearm was a Parker A-1 based on its condition, the elaborate engraving and Mrs. Houser's statement that her husband had previously been offered $10,000 or $12,000 for the shotgun.
Mrs. Houser contacted an auctioneer who scheduled a sale for October 23, 1995, in Urbana, Ohio. Prior to the auction, the auctioneer reviewed the gun collection. Mrs. Houser informed the auctioneer that her husband would like a reserve of $15,000 placed on the gun previously identified as the Parker A-1 shotgun. The auction bill described the gun as a "rare `Parker' SA-1 grade single barrel trap 32" barrel w/gold inlays, dove in gold underside of receiver, excellent cond., ser. #227229 (selling with reserve)." The entire gun collection sold at auction except for the Parker shotgun. The highest bid for that shotgun was $10,000.
At some point following the auction, Mrs. Houser took the gun to Charles Barnes' gun shop. Mrs. Houser testified that Mr. Barnes offered some money for the gun but the amount was so low that she considered it an insult. She believed the offer was unsatisfactory because her husband had previously been offered substantially more money for the gun.
On May 17, 1996, Mr. Cydrus and his companion, James Hatfield, were at a garage sale at Mrs. Houser's home. A year earlier, Mr. Hatfield had attended another garage sale at Mrs. Houser's home and noticed a sign indicating that there was a gun for sale. Upon inquiry by the two gentlemen, Mrs. Houser stated that the gun was still for sale and showed it to them. Mr. Cydrus returned later in the day and asked to see the gun again. After reexamining the gun, Mr. Cydrus asked to use Mrs. Houser's phone. Mr. Cydrus also asked Mrs. Houser for a copy of the auction bill, which Mrs. Houser provided.
Mr. Cydrus telephoned his grandson in Nashville, Tennessee, who is a gunsmith. Mr. Cydrus' grandson referred him to a gun dealer in Nashville who is knowledgeable about Parker shotguns. Mr. Cydrus contacted the gun dealer to determine how to confirm the gun was a Parker A-1. The dealer indicated that Mr. Cydrus would need to take the gun apart to determine if it was a genuine Parker A-1 shotgun. The grade of the gun would be marked by either a letter or a number. Mr. Cydrus was unable to take the gun apart.
The gun dealer also told Mr. Cydrus that he was skeptical that the Parker was an A-1 because only fifteen or sixteen gold-inlaid Parker A-1 shotguns had been made. However, the dealer was unable to identify the grade of the gun over the telephone. The dealer stated that he believed the gun had been upgraded. Mr. Cydrus asked Mrs. Houser if he could take the shotgun to have it examined but Mrs. Houser would not allow him to remove the gun from her home because she did not know him. Nonetheless, Mr. Cydrus purchased the gun for $6,500 that day.
Subsequently, Mr. Cydrus had the gun appraised at the National Gun Show in Nashville. This appraiser told Mr. Cydrus that the shotgun was a Parker C class which had been upgraded to appear as an A-1. Mr. Cydrus' grandson and Charles Barnes appraised the gun and informed Mr. Cydrus that the gun was valued at approximately $2,000.
Mr. Cydrus then filed a complaint in the Chillicothe Municipal Court. In his amended complaint, Mr. Cydrus sought relief on a claim of fraud. Alternatively, Mr. Cydrus sought rescission of the contract and return of the purchase price based on a claim of mutual mistake. After a trial to the court, the parties requested and were granted the opportunity to prepare and file written arguments. On March 30, 1998, the trial judge issued findings of fact, conclusions of law, and a judgment entry in which he found that Mr. Cydrus had not proven fraud by clear and convincing evidence.[1] The trial judge also held that Mr. Cydrus bore the risk of mistake because he was aware of his limited knowledge and he was negligent in not investigating further.
 II.
As the first two assignments of error both pertain to the fraud claim, we will consider them together. Both assignments of error allege that the evidence did not support the trial judge's conclusions and the judgment entry. The trial judge ruled that appellant failed to prove fraud by clear and convincing evidence.
A judgment of a trial court will not be reversed as being against the manifest weight of the evidence if the court's judgment is supported by some competent, credible evidence. Sec.Pacific Natl. Bank v. Roulette (1986), 24 Ohio St.3d 17, 20; C.E.Morris Co. v. Foley Constr. Co. (1978), 54 Ohio St.2d 279, syllabus. Where the proof required at trial must be clear and convincing, the reviewing court applies this manifest weight of the evidence standard. State v. Schiebel (1990), 55 Ohio St.3d 71,74. This standard of review is highly deferential and even "some" evidence is sufficient to sustain the judgment and prevent a reversal. Barkley v. Barkley (1997), 119 Ohio App.3d 155, 159. A reviewing court should be guided by a presumption that the findings of a trial court are correct, since the trial judge is best able to view the witnesses and observe their demeanor, gestures, and voice inflections, and use those observations in weighing the credibility of testimony. Id.
To support a fraud claim, a complainant must prove:
 (a) a representation or, where there is a duty to disclose, concealment of a fact,
(b) which is material to the transaction at hand,
 (c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred,
 (d) with the intent of misleading another into relying upon it,
 (e) justifiable reliance upon the representation or concealment, and
 (f) a resulting injury proximately caused by the reliance.
Cohen v. Lamko, Inc. (1984), 10 Ohio St.3d 167, 169. A failure to prove any one of these elements is fatal to the plaintiff's case. Here, the trial judge found that appellant failed to meet his burden because he did not prove that the representations made by appellee about the shotgun were made falsely, with knowledge of the falsity, or with utter disregard and recklessness as to whether the representations were true or false. The trial judge also found that appellee did not intend to mislead appellant into relying upon any misrepresentation and that appellant did not justifiably rely upon any representation.
In his first assignment of error, appellant alleges that the trial court erred in failing to consider appellee's testimony that she approached a gun dealer prior to the sale of the gun to appellant and, therefore, had knowledge of the gun's true value. Specifically, appellant claims that the trial court erred in failing to list appellee's admission as a finding of fact to be considered in its decision. We acknowledge that the trial court's entry does not specifically address appellee's testimony that she approached Charles Barnes regarding the sale of the gun and was offended by his low offer. We also acknowledge that Mr. Barnes testified that he told "a lady from Ross County" that the gun had been upgraded.
In his second assignment of error, appellant contends that the trial court erred in finding that appellee did not misrepresent material facts about the shotgun. The trial court found that the only possible misrepresentation appellee made was in showing appellant the inaccurate auction bill. The trial court further found that appellee did not have knowledge of the auction bill's falsity and all other statements and representations made to appellant by appellee appear to be true. Specifically, Mrs. Houser testified that the auctioneer had prepared the auction bill and she merely reviewed it. Assuming without deciding that appellant is correct in both these arguments, he still cannot prevail. The trial judge also found that Mr. Cydrus could not have justifiably relied on the information provided in the auction bill because the Parker expert warned him that the gun was likely not a Parker A-1. In spite of this warning, appellant proceeded to buy the gun anyway. Thus, any purported reliance on Mrs. Houser's statements or the auction bill was not justified. As these findings are supported by some competent, credible evidence in the record, there is no basis to overturn the trial court's decision. The record supports the trial court's finding that there was no justifiable reliance; this finding is fatal to appellant's claim. Therefore, we uphold the trial court's judgment that appellant failed to prove fraud by clear and convincing evidence. Appellant's first two assignments of error are overruled.
 III.
In his third assignment of error, appellant alleges that the trial court erred in deciding that there was no mutual mistake of fact. As the trial court's judgment is again supported by competent and credible evidence, appellant's third assignment of error is also overruled.
The doctrine of mutual mistake is a recognized ground for the rescission of a contract under certain circumstances. The standard for rescission of a contract in cases of mutual mistake is set forth in 1 Restatement of the Law 2d, Contracts (1981) 385, Mistake, Section 152(1), which provides:
 (1) Where a mistake of both parties at the time a contract was made as to a basic assumption on which the contract was made has a material effect on the agreed exchange of performances, the contract is voidable by the adversely affected party unless he bears the risk of the mistake under the rule stated in § 154.
Section 154 indicates the circumstances under which a party bears the risk of a mistake:
A party bears the risk of a mistake when
 (a) the risk is allocated to him by agreement of the parties, or
 (b) he is aware, at the time the contract is made, that he has only limited knowledge with respect to the facts to which the mistake relates but treats his limited knowledge as sufficient, or
 (c) the risk is allocated to him by the court on the ground that it is reasonable in the circumstances to do so.
In this matter, the trial judge concluded that both parties were mistaken as to the type of shotgun sold. However, the trial judge determined that the contract was not voidable because appellant bore the risk of the mistake. The court allocated the risk to the appellant because he was aware that he had only limited knowledge concerning the type of gun he was purchasing, but he treated this limited knowledge as sufficient. In support of this finding, the trial judge indicated that appellant had been informed by an expert in Parker shotguns that he should be suspicious about the class of shotgun he was purchasing. Rather than investigating the shotgun further, appellant purchased the firearm that day.
These findings are supported by the evidence in the record. Therefore, we must uphold the trial judge's conclusion that the contract between the parties is not voidable pursuant to the doctrine of mutual mistake. Appellant's third assignment of error is overruled.
Having overruled each of appellant's assignments of error, we affirm the judgment of the Chillicothe Municipal Court.
JUDGMENT AFFIRMED.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and Appellee recover of Appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
Any stay previously granted by this Court is hereby terminated as of the date of this entry.
It is ordered that a special mandate issue out of this Court directing the Chillicothe Municipal Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Kline, P.J. Evans, J.: Concur in Judgment and Opinion.
For the Court:
 BY: _________________________ William H. Harsha, Judge
[1] In their final written, arguments, both parties stipulate that fraud must be proven by clear and convincing evidence while mutual mistake of fact must be proven by a preponderance of the evidence.
 NOTICE TO COUNSEL Pursuant to Local Rule No. 14, this document constitutes afinal judgment entry and the time period for further appealcommences from the date of filing with the clerk.